HERBSMAN HAFER WEBER & FRISCH, L.L.P.
Dorothy M. Weber (DW 4734)
494 Eighth Avenue, Suite 600
New York, NY 10001
(212) 245-4580
*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------x

MANTLE I.P. HOLDINGS, LTD and MAJOR LEAGUE ALUMNI MARKETING, INC.

Plaintiffs,

-against-

CARDSMITHS, LLC, TOYNK TOYS, L.L.C., STEVEN LONEY, and JOHN AND JANE DOES A-Z, and XYZ COMPANIES 1-10,

Defendants.

------------------------------------------------------------------x

Case No.:

**COMPLAINT**

Mantle I.P. Holdings, Ltd ("Mantle") and Major League Alumni Marketing, Inc. ("MLAM") (collectively, "Plaintiffs"), by their attorneys, Herbsman Hafer Weber & Frisch, LLP, for their Complaint herein against Cardsmiths, LLC, Toynk Toys, L.L.C., Steven Loney, JOHN and JANE DOES A-Z, and XYZ COMPANIES 1-10, (collectively, "Defendants"), allege as follows:

**PARTIES**

1. Mantle is the successor-in-interest to all of the rights held by the late Mickey Mantle. The Estate of Mickey Mantle ("Mantle Estate") was probated by the State of Texas, and Mantle is the owner of the exclusive rights with respect to the trademarks "Mickey Mantle", "The Mick," and the Mickey Mantle signature (the "Trademark(s)"). Mantle is also the successor in

interest to numerous right of publicity registrations in and to the image and likeness of Mickey Mantle.

2. MLAM is a Virgina Corporation with its principal place of business in Colorado Springs, Colorado. MLAM is the exclusive licensing agent for Mickey Mantle.

3. On information and belief, defendant Toynk Toys, L.L.C. ("Toynk") is an Illinois corporation, having a principal place of business located at 2501 Chatham Road, Suite N, Springfield, Illinois 62704. Toynk is an entity which engages in the business of direct marketing, commercial exploitation and sale of collectible products throughout the United States.

4. On information and belief, Cardsmiths, LLC ("Cardsmiths") is a limited liability company incorporated in Florida, having a principal place of business located at 205 Burnet Drive, Gilberts, Illinois 60136. Cardsmiths is an entity which engages in the business of direct marketing, commercial exploitation and sale of collectible products throughout the United States.

5. Steven Loney is the co-founder and CEO of Toynk and Cardsmiths and personally profits from and controls the sale of Currency Series 5 Trading Cards (the "Infringing Product(s)").

6. Plaintiffs are informed and believe, and thereon allege, that at all times herein mentioned, each of the Defendants was the agent and employee of each of the remaining Defendants, and in doing the things hereinafter alleged, was acting within the course and scope of such agency and employment.

7. Upon information and belief, Defendants identified as various JOHN DOES and JANE DOES are individuals conducting business at various locations in the State of New York and elsewhere who are engaging in infringing conduct, including but not limited to manufacturing, importing, distributing, warehousing, or selling the Infringing Products in this District and throughout the United States, and are present in and/or doing business in the State of New York and are subject to the jurisdiction of this Court. The identities of the various JOHN DOES and

JANE DOES Defendants are not presently known and the Complaint herein will be amended to include the name or names of these individuals when such information becomes available (each a "Doe" and collectively "Does").

8. Upon information and belief, Defendants identified as the XYZ COMPANIES, through their agents, servants, and employees, are conducting business at various locations in the State of New York and elsewhere engaging in infringing conduct, including but not limited to manufacturing, importing, distributing, warehousing, or selling the Infringing Products in this District and throughout the United States, and are present in and/or doing business in the State of New York and are subject to the jurisdiction of this Court (each a "Defendant Company" and collectively, "Defendant Companies").

## JURISDICTION AND VENUE

9. As set forth below, and without any authorization from Plaintiffs, Defendants have exploited, and continue to exploit, the name, image and likeness of Mickey Mantle (or "the Mick") for their own economic benefit throughout the United States, including the State of New York, through the sale of collectible sports-related items which deceptively benefit from Mickey Mantle's likeness without authorization.

10. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1332, and 1338(a) and (b), 15 U.S.C. § 1121, the principles of supplemental jurisdiction under 28 U.S.C. § 1367, and the common law. This action arises under the U.S. Trademark Act of 1946, as amended (the "Lanham Act"), 15 U.S.C. §§ 1051-1127. The matter in controversy exceeds the sum of $75,000 exclusive of interest and costs. There is complete diversity between Plaintiffs and Defendants.

11. Venue lies in the Southern District Court of New York pursuant to 28 U.S.C. § 1391 (a) and (b) due to complete diversity between Plaintiffs and Defendants, and due to a substantial

part of the events that are the subject matter of this lawsuit occurring in this judicial district, including but not limited to, the sales and shipment of Infringing Products into this judicial district (a copy of a receipt for a purchase of an Infringing Product is attached hereto as Exhibit A and pictures of the packaging of the Infringing Product is attached hereto as Exhibit B).

## PLAINTIFFS' COMMITMENT TO THE LEGACY OF MICKEY MANTLE

12. Mickey Mantle is one of the truly great names in the annals of baseball history. He was a New York Yankee from 1951 to 1968 where he helped his team win an unprecedented twelve (12) American League pennants and seven (7) World Series titles.

13. The Mick was a three-time American League MVP and the 1956 Triple Crown Winner having attained the highest average, number of home runs, and runs batted in. The New York Yankees retired his number "7" in 1969 before a sold-out stadium of about 61,000 fans. Mickey Mantle was elected to the Baseball Hall of Fame in 1974. He is without a doubt one of the greatest center fielders in the history of baseball.

14. In addition to being remembered as one of baseball history's greats, Mickey Mantle's TOPPS 1952 "Rookie" card is among the most, if not the most, iconic baseball cards of all time selling for a record $12.6 million dollars.

15. The Trademarks, both registered and unregistered, and Mickey Mantle's likeness have acquired secondary meaning and are widely associated by the consuming public with his unique and distinctive career and being one of the greatest baseball players of all time.

16. Mickey Mantle's likeness and the Trademarks have been featured and used in connection with a wide variety of merchandise and products including exclusive licenses for baseball trading cards whose manufacture and distribution in the United States has been approved and authorized by Plaintiffs.

**THE MANTLE REGISTERED TRADEMARKS**

17. Mantle is the owner of registered trademarks for the "Mickey Mantle" mark and "The Mick" (*see* US Registration Numbers: 2914722; 3932582, 3941995; and 3932583). These marks are uncontestable.

18. Mantle owns common law and statutory trademark rights in and to the mark "Mickey Mantle", which is inherently distinctive as a result of broad media exposure, and the rights to the sale and promotion of the authorized Mickey Mantle Products, including, but not limited to, trading cards (the "Authorized Mantle Products").

19. From its inception, the Trademarks were so widely used that they have also acquired distinctiveness and developed a strong secondary meaning among consumers and the trade, such that consumers immediately identify Mantle as the exclusive source of the products bearing the Trademarks, signifying goodwill of incalculable value.

20. As a result of this, strong common law trademark rights have amassed in the Trademarks. Plaintiffs' use of the Trademarks has also built substantial goodwill in and to the Trademarks and is a valuable asset of Mantle.

21. The Trademarks are particularly distinctive when applied to baseball and trading card related products, signifying to the purchaser that the products come from Plaintiffs and are manufactured to Mantle's quality standards. Whether Plaintiffs manufacture the products themselves or license others to do so, Plaintiffs have ensured that products bearing the Trademarks are manufactured to the highest quality standards.

22. Mantle has also been supported by widespread advertising and promotion including *inter alia*, by its exclusive licenses with trading card companies such as Bowman, Topps, and Panini.

23. As a result, products bearing the Trademarks are widely recognized and exclusively

associated by consumers, the public, and the trade as being high-quality products sourced from Plaintiffs. As such, the goodwill associated with the Trademarks are of incalculable and inestimable value to Mantle.

**THE DEFENDANTS' UNLAWFUL ACTS**

24. It is against the backdrop of one of the most influential names in baseball, and arguably the most famous rookie trading card, that Cardsmiths began marketing and selling its trading cards and improperly trading off the name and fame of Mantle and his iconic rookie card.

25. On or around May 2026, Plaintiffs became aware of Defendants' Infringing Products, which prominently feature Mickey Mantle's image:




Fig. 1. Infringing Product Shipped to and Sold in New York



Fig. 2. Close-up of Infringing Product

26. Defendants' intent to capitalize on the value of Mantle's intellectual property rights is highlighted by the fact that it is this iconic image and package that is the specimen for Cardsmiths' pending trademark application. Notably, the iconic Mantle image is the only image on the box that is even recognizable.

27. In addition, Defendants willfully and without authorization reproduced the Topps 1952 "Rookie" card, which prominently features other third-party trademarks such as the New York Yankees logo and displays the entire 1952 "Rookie" card with Mickey Mantle's name, image and signature. There is no doubt that Defendants are improperly exploiting the "Rookie" card – the back of Defendants' card prominently describes it and such use further illustrates that they are trying to give the Infringing Product a legitimate provenance.




Fig. 3. Front and Back of Infringing Product




Fig. 4. Trademark Application Specimen for Serial Number 99571736

**<u>Amazon, eBay, and Other E-Commerce Sites</u>**

28. Defendants concurrently employ and benefit from substantially similar advertising and marketing as the Plaintiffs. For example, Defendants facilitate their sales of Infringing Products by their e-commerce stores. Plaintiffs did not license or authorize Defendants to use the Trademarks, nor are the Defendants authorized retailers of genuine Authorized Mantle Products.

29. Upon information and belief, Defendants are selling or have sold Infringing Products on eBay, Amazon, Best Buy, Target, and Walmart. Their Infringing Product trading card features the Mickey Mantle Rookie card in its entirety and it is prominently marketed as such.




Fig. 5. Infringing Mickey Mantle Rookie Card




Fig. 6. Promotional Trailor Featuring Infringing Mickey Mantle Rookie Card

Mantle's name, image and signature are prominently featured on Defendants' advertising and marketing.

30. The selling of the Infringing Products has sparked conversations online regarding the valuable nature and monetary value of the Mantle card, as well as consumer confusion regarding the authenticity. Users on Reddit stated:

- "Is this an OG or a reprint? Wondering how you got an authentic auto from the Mic." (@notrednamc).
- "The Mickeys will be a premium chase forsureeee. Such a nice card in opal." (@Viking_Storm).
- "Is this rare? Wondering if this has any value higher than a regular." (@LORDNIKON777) showcasing the Infringing Product.
- "Mantle Monday. Just need a few more…" including a picture of fifteen (15) of the Infringing Products (@confusedcalvin).
- "1952 Mickey Mantle, 5/45. Favorite one today[.]" (@dtattsla).
- "WTB CARDSMITHS CURRENCY SERIES 5 MICKEY MANTLE ONYX 1/1 -$15,000" (@K1LL3ROO).

Facebook users are also stating: "A lot of people are chasing that card right now," regarding the Infringing Product showing that Cardsmiths' improper use of the Mantle intellectual property was having the desired effect of consumer confusion. *See* social media correspondence attached hereto as Exhibit C. As set forth herein, Defendants have usurped Plaintiffs' unique and valuable exclusive rights with their manufacture, distribution, sale and/or marketing of the Infringing Products.

## RELEVANT FACTS

**A. Plaintiffs Became Aware of the Deceptive, False and Misleading Advertising and Statements of the Defendants**

31. Prior to the filing of this Complaint, Plaintiffs became aware of multiple websites which offer for sale (among other Infringing Products) a low-quality Mickey Mantle trading card.

32. Defendants' card sets sell for anywhere between $29.99 and $2,500.00 and more.

33. On or about June 9, 2026 and June 10, 2026, Topps and Mantle sent respective cease-and-desist letters to Cardsmiths, LLC. Mantle advised that Plaintiffs possessed an exclusive right to sell trading products associated with Mickey Mantle and that Defendants' sale of Infringing Products violated those rights including Mantle's intellectual property rights. *See* cease-and-desist letters attached hereto as Exhibit D. The letters requested that Defendants cease selling the Infringing Products immediately, as well as provide information regarding their sales.

34. On or about June 15, 2026, Evan Berger, attorney for Defendants, indicated that, despite the cease-and-desist letter, his client would continue selling Infringing Products.[1]

**B. The Mickey Mantle Trademarks**

35. Mickey Mantle is an integral part of four registered Trademarks with the United States Patent and Trademark Office ("USPTO").

36. The mark "Mickey Mantle" has been in use as early as 1952 and was registered on December 28, 2004, under Registration No. 2914722, in international classes 014, 016, 021, 025, and 028, covering goods such as jewelry, printed materials, crystal, clothing, athletic equipment and toys. Mantle owns the registration, which is and continues to be, in full force and effect as a recent renewal was accepted by the USPTO on March 6, 2026.

[1] Since that time, on random websites, Defendants have "blurred" the Mickey Mantle image from the advertising and sale of the box but continue to sell the product with the infringing intellectual property. However, the Infringing Products are still on physical store shelves, where of course the image has not been blurred and would be included on Infringing Products used for the fulfillment of online orders.

37. The mark "Mickey Mantle" has been in use since 2000 in connection with restaurant services, and since 2007 in connection with website services and was registered in classes 041 and 043 on March 15, 2011, under Registration No. 3932582. Mantle owns the registration, which is and continues to be in full force and effect as a renewal was accepted by the USPTO on June 17, 2021.

38. The Mickey Mantle signature has been in use since 2000 in connection with restaurant services, and since 2007 in connection with website services, and was registered in classes 041 and 043 on April 5, 2011, under Registration No. 3941995. Mantle owns the registration, which is and continues to be in full force and effect as a renewal was accepted by the USPTO on June 17, 2021.

39. The mark "The Mick" has been in use since 2007 in connection with website services and was registered in class 041 on March 15, 2011, under Registration No. 3932583. Mantle owns the registration, which is and continues to be in full force and effect as a renewal was accepted by the USPTO on June 14, 2021.

**C. Defendants Other Violations of Plaintiffs' Rights**

40. Defendants' actions constitute a flagrant violation of Mantle's rights of publicity, as Defendants have misappropriated, for their own commercial purposes, the valuable name and likeness of Mickey Mantle.

41. Moreover, Defendants have violated federal and common law trademark and unfair competition laws by deceptively using "Mickey Mantle" which is part of Mantle's registered Trademarks, and otherwise marketing, promoting and advertising the Infringing Products in a way which intentionally gives the public the false impression that the Infringing Products are products which have been licensed, approved and/or endorsed by Mantle and/or its members and/or their successors-in-interest. The Infringing Products are believed to be commercial products of inferior

quality, and Plaintiffs' association with this product has diluted and continues to dilute the goodwill associated with Mickey Mantle and Mantle's valuable Trademarks.

42. In short, Defendants' illicit acts are willful and violate, *inter alia*, Mantle's rights of publicity, the Lanham Act, and constitute unfair competition and deceptive trade practices.

43. Plaintiffs bring this lawsuit (i) to stop Defendants from continuing their unlawful manufacture, distribution, sale and other exploitation of the Infringing Products and from wrongfully appropriating for themselves use of Mantle's valuable and unique property in connection therewith, and (ii) to recover damages, restitution, punitive damages, treble damages and the costs of this action, including attorney fees, from Defendants arising from their blatant and unlawful conduct to date.

## FIRST CLAIM FOR RELIEF
## FEDERAL TRADEMARK INFRINGEMENT
## (15 U.S.C. § 1114)
## (AGAINST ALL DEFENDANTS)

44. Plaintiffs reallege and incorporate every allegation contained in the preceding paragraphs as though fully set forth herein.

45. Defendants have knowingly and intentionally used, and continue to use, without the consent of Mantle, copies of the Mickey Mantle registered Trademarks, including a Mickey Mantle signature on the Infringing Products, which is confusingly similar and copied from the Mickey Mantle registered signature Trademark, in commerce in connection with the sale, offering for sale, distribution and advertising of the Infringing Products in a way which is likely to cause confusion and/or mistake among potential consumers by falsely suggesting and implying that the Infringing Products are authorized, approved and/or sponsored by Plaintiffs, or that Plaintiffs are in some way affiliated, connected or associated with the Infringing Products.

46. Defendants' use of the Mickey Mantle registered Trademarks without permission is a willful and calculated misappropriation of the enormous goodwill of Mickey Mantle and is designed to trade on his phenomenal popularity. Defendants sell the Infringing Products in interstate commerce or in a manner substantially affecting interstate commerce in connection with the sale, offering for sale, distribution, and advertising of the Infringing Products. As such, Defendants' use of the Trademarks is likely to cause confusion, mistake, or deception among consumers as to the source, quality, and nature of Defendants' goods.

47. Defendants' conduct constitutes violations of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

48. The acts and conduct of Defendants have caused and, unless restrained and enjoined by this Court, will continue to cause, great and irreparable harm to the Plaintiffs in that there is a likelihood of confusion by the public as to the source or sponsorship of the Infringing Products and that the offering for sale and sale of the Infringing Product usurps and perverts the market for legitimate Authorized Mantle Products. Such irreparable harm cannot be adequately compensated or measured by money alone.

49. Plaintiffs have no adequate remedy at law.

50. By reason of the foregoing, Plaintiffs therefore seek permanent injunctive relief pursuant to 15 U.S.C. § 1116 enjoining Defendants from continuing the aforesaid violation of Section 32(1) of the Lanham Act and use of the "Mickey Mantle" registered Trademarks. Plaintiffs seek such other injunctive relief as may be reasonable and appropriate to protect against further infringement of their rights in and to the Trademarks.

51. By reason of the foregoing, pursuant to 15 U.S.C. § 1117, Plaintiffs further seek an award of damages, as well as Defendants' profits, treble damages, statutory damages, and

reasonable attorney fees. Destruction of infringing articles is authorized by 15 U.S.C. § 1118. Plaintiffs seek such other monetary relief as may be reasonable and appropriate.

## SECOND CLAIM FOR RELIEF
## FALSE DESIGNATION OF ORIGIN
## (15 U.S.C. § 1125(a))
## (AGAINST ALL DEFENDANTS)

52. Plaintiffs reallege and incorporate every allegation contained in the preceding paragraphs as though fully set forth herein.

53. The Trademarks and Mickey Mantle's name and likeness are all arbitrary and distinctive and have acquired secondary meaning. Such names, likenesses and Trademarks are entitled to protection from misappropriation and misidentification of non-authorized goods and products. Similarly, the Mickey Mantle signature has acquired secondary meaning in that the public identifies Mantle as the source of, or as being in some way associated with, goods which bear or are marketed with that signature.

54. Defendants have used, and continue to use, the Trademarks, name, likeness and signature of Mickey Mantle on and in connection with the Infringing Products in a way which is likely to cause confusion and/or mistake among potential consumers by falsely suggesting and implying that the Infringing Products were authorized, approved and/or sponsored by Plaintiffs or that the Plaintiffs are in some way affiliated, connected or associated with the Infringing Products.

55. The acts and conduct of Defendants have caused, and unless restrained and enjoined by this Court will continue to cause, great and irreparable harm to Plaintiffs in that there is a likelihood of confusion by the public as to the source or sponsorship of the Infringing Products, and that the offering for sale and sale of the Infringing Products usurps and perverts the market for legitimate Authorized Mantle Products. Such irreparable harm cannot be adequately compensated or measured by money alone.

56. Defendants' unauthorized use of the Trademarks on the Infringing Products constitutes violations of 15 U.S.C. § 1125(a). Such acts constitute (a) a false designation of origin, (b) a false or misleading description of fact and/or (c) a false and misleading representation of fact resulting in unfair competition with Plaintiffs in that such conduct is likely to cause confusion, mistake or deception, contrary to fact, that the business and products of Defendants are sponsored by, endorsed by or emanate from Plaintiffs or otherwise are connected with Plaintiffs. Such use, therefore, causes irreparable damage and harm to Mantle's goodwill in the Trademarks.

57. Defendants' wrongful and infringing conduct has caused and will continue to cause Plaintiffs to suffer damage and injury to their business, reputation and goodwill and to sustain substantial loss of revenues and profits.

58. Unless enjoined by this Court, Defendants will continue to perform the acts complained of herein and cause said damages and injury, all to the immediate and irreparable harm of Plaintiffs. Plaintiffs have no adequate remedy at law for Defendants' wrongful acts.

59. Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the Infringing Products to the general public involves the use of counterfeit trademarks and is a willful violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

60. By reason of the foregoing, Plaintiffs therefore seek permanent injunctive relief pursuant to 15 U.S.C. § 1116 enjoining Defendants from continuing the aforesaid violations of § 43(a) of the Lanham Act and the use of the "Mickey Mantle" registered Trademarks. Plaintiffs seek such other injunctive relief as may be reasonable and appropriate to protect against further infringement of their rights in and to the Trademarks.

61. By reason of the foregoing, pursuant to 15 U.S.C. § 1117, Plaintiffs further seek an award of damages, as well as Defendants' profits, treble damages, statutory damages, and

reasonable attorney fees. Destruction of infringing articles is authorized by 15 U.S.C. § 1118. Plaintiffs seek such other monetary relief as may be reasonable and appropriate.

**THIRD CLAIM FOR RELIEF**
**TRADEMARK DILUTION BY BLURRING**
**(15 U.S.C. § 1125(c))**
**(AGAINST ALL DEFENDANTS)**

62. Plaintiffs reallege and incorporate every allegation contained in the preceding paragraphs as though fully set forth herein.

63. The Trademarks, including Mickey Mantle's signature, are distinctive Trademarks that have been in use since the 1950s. Additionally, Plaintiffs have acquired federal trademarks granting them the exclusive use of these Trademarks. Plaintiffs have been selling goods with these Trademarks since the 1950s.

64. The Trademarks are known throughout both the United States and the world as that of Mickey Mantle. Goods bearing these Trademarks are sold throughout the world and are renowned by collectors across the globe. The Trademarks and Mickey Mantle likeness are known both throughout the sports memorabilia communities and the general public.

65. Defendants have used Mantle's famous and distinctive Trademarks on and in connection with the Infringing Products in commerce and for commercial purposes.

66. Defendants' use of the Trademarks is designed and willfully intended to trade on the respective reputations and the affirmative associations attached to the famous and distinctive Trademarks. Defendants' Infringing Products constitute the sale of and contain trading cards that represent the exact likeness of Mickey Mantle. Additionally, each trading card contains a signature that is an exact replica of Mickey Mantle's trademarked signature.

67. As a result of the foregoing, the distinctive quality of the famous and distinctive Trademarks have been diluted.

68. Defendants' conduct constitutes violations of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

69. Defendants have made commercial use of Mantle's famous marks, and those confusingly similar to them, in the marketing of their Infringing Products and services, which Defendants have used and transported in United States interstate commerce. Defendants' use began after Mantle's Trademarks had become famous.

70. Defendants' acts have lessened the capacity of Mantle's well-known, famous Trademarks to identify and distinguish the goods and services of Plaintiffs. Defendants' acts have blurred and diluted the unique association which heretofore existed between Mantle's well-known, famous Trademarks and the goods and services made, licensed, advertised, or sponsored by Plaintiffs, to the detriment of Plaintiffs. Defendants committed these acts willfully and with the intent to trade on the reputation and goodwill of Mantle and to dilute Mantle's famous Trademarks by blurring their association with Plaintiffs as the authorized source of Mantle goods and services.

71. Defendants' use will irreparably harm Plaintiffs and will continue unless enjoined and restrained from producing, manufacturing, printing, distributing, selling, marketing, promoting, advertising and otherwise exploiting the Infringing Products. Plaintiffs' remedy at law is not adequate to fully compensate Plaintiffs for their injuries. Plaintiffs therefore seek injunctive relief precluding Defendants from further acts of infringement and from any further use and reference to or association with Mantle and the Trademarks. Plaintiffs seek destruction of infringing articles and Infringing Products, as authorized by 15 U.S.C. § 1118, and an injunction against further infringement and dilution pursuant to 15 U.S.C. § 1116.

72. By reason of Defendants' acts alleged herein, Plaintiffs have, and will suffer damage to their business, reputation, and goodwill and the loss of sales and profits Plaintiffs would

have made but for Defendants' acts. Plaintiffs seek damages and attorney fees, as authorized under 15 U.S.C. §§ 1125(c)(5) and 1117.

73. Because of the willful nature of the Defendants' wrongful acts, the Plaintiffs are entitled to an award of treble damages and increased profits pursuant to 15 U.S.C. § 1117.

**FOURTH CLAIM FOR RELIEF**
**TRADEMARK DILUTION BY TARNISHMENT**
**(15 U.S.C. § 1125(c))**
**(AGAINST ALL DEFENDANTS)**

74. Plaintiffs reallege and incorporate every allegation contained in the preceding paragraphs as though fully set forth herein.

75. Defendants' acts have tarnished Mantle's well-known, famous marks by associating Plaintiffs (and their otherwise authorized goods and services) with the commercial sale of unauthorized goods and services.

76. The inferior quality of the Infringing Products tarnishes the enormous and unprecedented reputation for quality that the Trademarks have come to convey.

77. Furthermore, Defendants' acts are likely to harm the reputation of, tarnish, and further dilute Mantle's Trademarks, in that any defect, objection, or fault found with Defendants' products, services, and marketing efforts will necessarily reflect upon, and seriously injure, the business reputation of Plaintiffs and tarnish the Trademarks, and therefore damage Plaintiffs in violation of Section 43(c) of the Trademark Act, 15 U.S.C. § 1125(c), to the detriment of Plaintiffs. Defendants committed these acts willfully and with the intent to trade on the reputation and goodwill of Mantle and to cause dilution of Mantle's famous Trademarks by tarnishing those marks, and MLAM, by association with them.

78. Defendants' use will irreparably harm Plaintiffs and will continue unless enjoined in this Court. Plaintiffs' remedy at law is not adequate to fully compensate Plaintiffs for their

injuries. Plaintiffs therefore seek injunctive relief, pursuant to 15 U.S.C. § 1116, precluding Defendants from further acts of infringement and from any further use and reference to or association with Plaintiffs and their marks. Plaintiffs also seek destruction of infringing articles, as authorized by 15 U.S.C. § 1118.

79. By reason of Defendants' acts alleged herein, Plaintiffs have, and will suffer damage to their business, reputation, and goodwill and the loss of sales and profits Plaintiffs would have made but for Defendants' acts. Plaintiffs seek damages and attorney fees, as authorized under 15 U.S.C. §§ 1125(c)(5) and 1117.

80. Because of the willful nature of the Defendants' wrongful acts, the Plaintiffs are entitled to an award of treble damages and increased profits pursuant to 15 U.S.C. § 1117.

**FIFTH CLAIM FOR RELIEF**
**VIOLATION OF THE TEXAS RIGHT OF PUBLICITY STATUTE**
**(Tex. Prop. Code § 26)**
**(AGAINST ALL DEFENDANTS)**

81. Plaintiffs reallege and incorporate every allegation contained in the preceding paragraphs as though fully set forth herein.

82. Mantle has an exclusive proprietary interest in the publicity value of the Mickey Mantle name and likeness, as well as the attendant exclusive right to utilize or license others to utilize such name, photographs, signature, and/or likeness for commercial exploitation.

83. Defendants have willfully misappropriated Mantle's exclusive rights to exploit the names, photographs, signature and likeness of Mickey Mantle by using same without any authorization from Mantle, and indeed over Mantle's express refusal, in connection with their acts taken to produce, manufacture, print, distribute, sell, market, promote, advertise, and/or otherwise exploit the Infringing Products.

84. Defendants conduct violates the "Buddy Holly Bill," Tex. Prop. Code §§ 26.001, et seq.

85. By reason of the foregoing, Defendants have caused irreparable damage to Plaintiffs. Pursuant to Tex. Prop. Code § 26.013, Plaintiffs seek to recover an amount of any damages sustained, the amount of Defendants' profits attributable to the unauthorized use, exemplary damages, and reasonable attorneys' fees, expenses, and court costs.

**SIXTH CLAIM FOR RELIEF**
**DECEPTIVE ACTS AND PRACTICES UNDER NEW YORK GENERAL BUSINESS LAW §§ 349 AND 350**
**(N.Y. Gen. Bus. Law §§ 349 and 350)**
**(AGAINST ALL DEFENDANTS)**

86. Plaintiffs reallege and incorporate every allegation contained in the preceding paragraphs as though fully set forth herein.

87. New York General Business Law Section 349 declares unlawful "[u]nfair, deceptive, or abusive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state."

88. New York General Business Law Section 350 declares unlawful "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state."

89. Mantle enjoys well-established common law rights in and to the Trademarks in the State of New York, which rights are superior to any rights that Defendants may claim, and Plaintiffs have built significant goodwill in the Trademarks.

90. The Trademarks have acquired secondary meaning, are inherently distinctive and serve to identify Mantle.

91. Mantle first adopted and used the Trademarks as a means of establishing goodwill and reputation and to describe, identify or denominate particular goods and services offered by

Plaintiffs and to distinguish them from similar goods offered by others. As a result, the Trademarks have acquired secondary meaning.

92. Defendants have used, in connection with the sale of their Infringing Products, a product design and packaging that is identical or confusingly similar to the Trademarks and which is likely to cause and/or has caused confusion or mistake as to the source, affiliation, connection or association of Defendants' products in that consumers thereof are likely to associate or have associated such products as originating with Plaintiffs, all to the detriment of Plaintiffs.

93. Through the advertisement, offer to sell and/or sale of the Infringing Products bearing a design and packaging that infringe the Trademarks, Defendants have engaged in consumer-oriented conduct that has directly and/or indirectly affected the public interest of New York and has resulted in injury to consumers of New York.

94. Defendants' acts as complained of herein are materially misleading to a substantial portion of the consuming public and have deceived and/or are likely to deceive a material segment of the consuming public to whom Defendants have directed Defendants' Infringing Products and such acts have caused injury to Plaintiffs.

95. Through the acts complained of herein, Defendants have willfully engaged in deceptive acts or practices in the conduct of business and the furnishing of Defendants' products in violation of N.Y. Gen. Bus. Law §§ 349 and 350.

96. Plaintiffs have no adequate remedy at law.

97. Plaintiffs have suffered and continue to suffer economic loss directly and proximately caused by Defendants' actions alleged herein.

98. By reason of the foregoing, Plaintiffs seek monetary damages, injunctive relief, and attorneys' fees pursuant to N.Y. Gen. Bus. Law §§ 349 and 350.

**SEVENTH CLAIM FOR RELIEF**
**UNJUST ENRICHMENT**
**(AGAINST ALL DEFENDANTS)**

99. Plaintiffs reallege and incorporate every allegation contained in the preceding paragraphs as though fully set forth herein.

100. On information and belief, Defendants have wrongfully received money from third parties that they should not in equity and good conscience retain, on account of their federal and common law trademark, false designations of origin, unfair competition and related acts. Defendants are therefore involuntary trustees, holding the gross receipts from their product sales and revenues to the extent attributable to the Infringing Products and therefore attributable to the infringement of Mantle's trademark rights therein.

101. By virtue of their wrongful conduct, Defendants illegally received money and profits that rightfully belonged to Plaintiffs.

102. The benefit unjustly received by those Defendants implies a promise, or quasi-contract, to pay those benefits to Plaintiffs.

103. Plaintiffs have demanded that Defendants stop their infringements and misappropriation of Plaintiffs' marks and business goodwill, and Defendants have refused.

104. Plaintiffs seek restitution from Defendants consisting of all profits received by those Defendants on account of their violations of Plaintiffs' rights. Plaintiffs seek the imposition of a constructive trust over all profits received by Defendants by virtue of Defendants' infringing, deceptive, and unfair conduct as set forth herein.

**EIGHTH CLAIM FOR RELIEF**
**UNFAIR COMPETITION - MISAPPROPRIATION OF GOODWILL**
**(AGAINST ALL DEFENDANTS)**

105. Plaintiffs reallege and incorporate every allegation contained in the preceding paragraphs as though fully set forth herein.

106. The acts of the Defendants constitute unfair competition, misappropriation of the goodwill and reputation of Mantle and Mickey Mantle. Defendants have usurped for their own commercial advantage the unique elements and features of the Trademarks and the affirmative associations attached thereto by the public due to the extraordinary efforts and talents of Mickey Mantle. Defendants' conduct is specifically designed for purposes of trading upon the phenomenal popularity and goodwill of Mickey Mantle.

107. Unless Defendants are enjoined and restrained from producing, manufacturing, printing, distributing, selling, marketing, promoting, advertising and otherwise exploiting the Infringing Products, Plaintiffs will be irreparably damaged.

108. Plaintiffs have no adequate remedy at law.

109. By reason of the foregoing, Plaintiffs are entitled to a permanent injunction enjoining Defendants from further such acts of unfair competition by misappropriation of goodwill, and for an award of compensatory and punitive damages from Defendants in an amount to be proved at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

110. With regard to the First, Second, Third, Fourth, Sixth, and Eighth Claims for Relief, a permanent injunction, pursuant to Federal Rule of Civil Procedure 65, 15 U.S.C. § 1116, N.Y. Gen. Bus. Law §§ 349-350, and 28 U.S.C. § 1651, enjoining the Defendants, their affiliates, officers, agents, servants, employees, attorneys, and all persons acting for, with, by, through, under or in active concert with them from:

a. using or otherwise exploiting the Trademarks or any reproductions, copies or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any and all Infringing Products or any products which are

not Authorized Mantle Products;

b. passing off, inducing, or enabling others to sell or pass off any product not produced under the authorization, control, or supervision of Plaintiffs or as a product produced by Plaintiffs;

c. committing any acts calculated to cause consumers to believe that Defendants' Infringing Products are those sold under the authorization, control or supervision of Plaintiffs, or are sponsored by, approved by, or otherwise connected with Plaintiffs;

d. further infringing the Trademarks and damaging Plaintiffs' goodwill;

e. otherwise competing unfairly with Plaintiffs in any manner;

f. manufacturing, producing, printing, shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Plaintiffs, nor authorized by Plaintiffs to be sold or offered for sale, and which bear any of the Trademarks, or any reproductions, copies or colorable imitations thereof, including but not limited to the Infringing Products.

111. That Defendants, within fourteen (14) days after service of judgment with notice of entry thereof upon them, be required to file with the Court and serve upon Plaintiffs a written report under oath setting forth in detail the manner and form in which Defendants have complies with all the aspects of the injunctive relief ordered by this Court;

112. With regard to the First, Second, Third, Fourth, Sixth, and Eighth Claims for Relief, entry of an Order, pursuant to Federal Rule of Civil Procedure 65, 15 U.S.C. § 1116, N.Y. Gen. Bus. Law §§ 349-350, and 28 U.S.C. § 1651, that, upon Plaintiffs' request, those in privity with Defendants and those with notice of the injunction, including; without limitation, any online marketplace platforms (including but not limited to eBay, Best Buy, Amazon, Walmart, and Target), web hosts, sponsored search engine or ad-word providers, credit cards, merchant account

providers, third party processors and other payment processing service providers, and Internet search engines such as Google, Bing and Yahoo shall:

a. disable and cease providing services being used by Defendants, currently or in the future, to engage in the sale of goods using the Mantle Trademarks or related products not authorized by Plaintiffs; and

b. disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of counterfeit and infringing goods using the Mantle Trademarks or related products not authorized by Plaintiffs;

113. With regard to all Claims for Relief, that Defendants account for and pay to Plaintiffs all profits realized by Defendants by reason of Defendants' willful and unlawful acts herein alleged, and that the amount of damages for infringement be trebled pursuant to 15 U.S.C. § 1117(b) due to the exceptional nature of this case and the Defendants' willful infringement;

114. Entry of an Order that, upon Plaintiffs' request, Defendants and any financial institutions, payment processors, banks, escrow services, money transmitters, or marketplace platforms, and their related companies and affiliates, identify and restrain all funds, up to and including the total amount of judgment, in all financial accounts and/or sub-accounts used in connection with the Defendants, in addition to any alias seller identification names and/or e-commerce store names used by Defendants in the past, present, or in the future, as well as any other related accounts of the same customer(s) and any other accounts which transfer funds into the same financial institution account(s), to be surrendered to Plaintiffs in partial satisfaction of the monetary judgment entered herein;

115. With regard to all Claims for Relief, that Defendants be required to account for and to pay to Plaintiffs all of Plaintiffs' damages resulting from Defendants' infringing and unfair activities in an amount not less than $750,000.00 USD or in an amount to be determined at trial;

116. In the alternative, with regard to the First, Second, Third, and Fourth Claims for Relief, that Plaintiff be awarded statutory damages up to $2,000,000.00 USD per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as provided by 15 U.S.C. § 1117(c)(2);

117. For Judgment in favor of Plaintiffs against Defendants that Defendants have:

a. willfully infringed the Trademarks; and

b. otherwise injured Plaintiffs' business reputation and goodwill by Defendants' acts and conduct as set forth in this Complaint;

118. With regard to the First, Second, Third, and Fourth Claims for Relief, that Defendants be required, pursuant to 15 U.S.C. § 1118, to deliver for destruction to Plaintiffs' counsel, at the New York address set forth in the signature block below, all goods in its possession or under its control, including all of Defendants' Infringing Products, and any promotional and advertising material related thereto, and any other unauthorized items which infringe the Mantle Trademarks;

119. Entry of an Order directing Defendants to correct their practices and to comply with anti-deceptive practice statutes nationwide;

120. With regard to the Seventh Claim for Relief, that a constructive trust be imposed on all assets ostensibly owned by the Defendants or in the possession, custody or control the Defendants, from their product sales and revenues to the extent attributable to the Infringing Products and therefore attributable to the infringement of Mantle Trademarks and rights therein;

121. With regard to the First, Second, Third, Fourth, Fifth, and Sixth Claims for Relief, pursuant to 15 U.S.C. § 1117, Tex. Prop. Code § 26.013, and N.Y. Gen. Bus. Law §§ 349-350, that Plaintiffs be awarded their reasonable attorneys' fees and full costs for bringing this action;

122. That Defendants be required to pay pre-judgment interest on all damages and profits awards;

123. Award any and all other and further relief, including but not limited to temporary, preliminary, and permanent injunctive relief, as this Court deems just and proper under the circumstances and as allowed by law.

Dated: New York, New York
September 24, 2026

HERBSMAN HAFER WEBER & FRISCH, LLP

By: ______________________________
Dorothy M. Weber (DW-4734)
494 Eighth Avenue, Suite 600
New York, NY 10001
(212) 245-4580
dorothy@musiclaw.com

*Attorneys for Plaintiffs*